## LEXINGTON AND WEST CAMBRIDGE RAILROAD COMPANY *vs.* DAVID ELWELL & others.

The sureties on the bond of the treasurer of a railroad company, the condition of which provides for his faithful discharge of the duties of the office " during his continuance in office, during the present year and for such further periods as he may from time to time be elected to said office," are not liable for defaults which occur after an omission to reëlect him at a regular meeting for that purpose, and after such further time as may be reasonably sufficient for the election and qualification of his successor, although he continues to act as treasurer, and is reëlected at the next regular meeting thereafter; but they are not discharged from their liability by a vote of the corporation postponing for five weeks the time of the regular meeting for the election of officers, and the consequent postponement of an election for that period, nor by the corporation's assuming the entire management of the railroad, after having leased it to another corporation.

No formal vote of a corporation accepting their treasurer's bond needs to be shown, in order to entitle them to maintain an action upon it.

A corporation is not estopped to maintain an action upon their treasurer's bond by having accepted a report of an auditing committee who had approved his accounts, nor by making a report founded thereon to the legislature.

An indorsement by the treasurer of a corporation upon notes signed by himself, and running to the corporation, is sufficient evidence to render the sureties upon his bond liable for the amount indorsed, as for moneys received by him in his official capacity.

If the treasurer of a corporation has appropriated to his own use sums of money received from a certain source during the time covered by his official bond, and other sums received from the same source after the bond had expired, and he has afterwards entered upon the books a sum as received from that source, and such sum was not in fact received at the date of the entry, and there is nothing to show when the same, or the items of which it was composed, should have been entered, it is proper, in an action upon the bond, to apply one half of it to the time covered by the bond.

CONTRACT upon a bond executed by the defendants as sureties of William Stevens, the plaintiffs' treasurer, dated January 2, 1850, with the following condition :

" Whereas the said William Stevens has been elected to the office of treasurer of the said Lexington and West Cambridge

Railroad Company, and has signified his acceptance thereof; now if the said William Stevens as treasurer shall during his continuance in office, during the present year, and for such further periods as he may from time to time be elected to said office, well and truly perform the duties of said office, and shall faithfully disburse all moneys that may come into his hands, and shall in all respects faithfully discharge all the duties of said office, according to the laws of said commonwealth and the by-laws of said company, then this obligation shall be null and void; and shall otherwise remain in full force and virtue."

The case was referred by this court to W. G. Russell, as assessor, who found the following facts:

By article 1st of the by-laws, adopted in 1845, it was provided that the annual meetings of the corporation should be held on the last Wednesday of June, in each year. By article 7th it was provided that the treasurer's bond should be in the custody of the president. William Stevens was duly elected treasurer of the corporation in July 1849; and the bond declared on has been, from the time of its execution until the commencement of this action, in the custody of Charles Hudson, who has been annually elected and has acted as president during all that period. No vote is to be found upon the records of the stockholders or directors, accepting or in any way relating to the bond; but it was proved that in 1856 it was submitted to the board of directors at one of their regular meetings.

At a special meeting of the corporation held for the purpose in July 1849, it was voted that the 1st article of the by-laws be so amended, that the annual meeting should thereafter be held on the 1st Wednesday of August instead of the last Wednesday of June, and that the board of directors then existing should hold over during the interval. The annual meetings were accordingly thereafter held on the 1st Wednesday of August, and a board of directors was annually chosen, who annually from 1849 to 1859 elected Stevens as clerk and treasurer. The record of the directors' meetings showed no election of treasurer by the board of directors chosen at the annual meeting for 1860; but

at the first meeting of the directors Stevens was chosen clerk, and it was voted to postpone the election of treasurer till the next meeting. The records showed nothing further in relation to the election of treasurer until the meeting of the new board of directors, elected in 1861, who at their first meeting, held in August 1861, elected Stevens as clerk and treasurer. He was also reëlected in 1862, and died on the 28th of August 1862. He acted as treasurer during the whole period between the annual meeting in 1860 and his election in 1861. There was also a vote of the directors in December 1860, accepting " the report of the doings of the business of the year, as prepared by the treasurer;" his account for the year ending July 27th 1861 was produced in evidence, signed by him; and it was proved that each year while he acted as treasurer a detailed account, purporting to contain a full and accurate statement of all sums received and paid out by him, was presented by him and accepted by a vote of the stockholders. During each of the years from 1856 to 1861, a committee was chosen to settle with the treasurer, or to audit his accounts, and they reported each year, except in 1860, when certain of the directors examined the accounts, that they found the accounts to be correct.

From 1847 to 1857 the railroad of the plaintiffs was under a lease to the Fitchburg Railroad Company, and during that time it was equipped, managed and operated by them; and after 1857 it was operated by the plaintiffs.

The assessor found that Stevens had converted to his own use, prior to July 1860, funds of the plaintiffs to the amount, including interest to the date of the writ, of $2677.09; and after January 1st 1861 funds to the amount, with interest, of $963.34.

He further found that, at sundry times between August 1st 1858 and January 1st 1860, Stevens received sums to the amount of $400, which should have been entered to the credit of the passenger department and the freight department, but which he did not enter at all; and that, at sundry times after January 1st 1861, he received sums to the amount of $400, which should have been entered to the credit of the same accounts but which

he did not enter at all; that on the 25th of August 1862 he entered upon the books to the credit of the passenger department, " Cash received of I. N. Damon, August 9, 1862, omitted, $265." It did not appear that this sum 'had been paid by Damon at or about that time, or that the passenger department should be credited with that sum at or about that time, or that any credit of that specific sum was at any one time, or at any specific times, omitted from the credits of that department. The assessor therefore " allowed the same generally in account to Stevens, in set-off to the amounts omitted by him from the credits due to said department, and not in set-off to any specific sums so omitted."

The plaintiffs held a note of Stevens for $1000, dated June 30th 1856, and at sundry times prior to July 1860 Stevens indorsed thereon payments of interest, as having been received by him as treasurer from himself individually, amounting to $180; for which sums no credit was given to the plaintiffs upon their books, or in the annual accounts of Stevens. The plaintiffs also held a note signed by Stevens and another person, upon which similar indorsements of interest were made, but with no entries thereof elsewhere. And there was no other evidence whether the sums mentioned were actually paid or not.

Upon this report of the assessor, the case was reserved by *Merrick*, J. for the determination of the whole court.

*J. G. Abbott*, for the plaintiffs.

*W. Brigham*, for the defendants. 1. The bond was never duly accepted. Gen. Sts. *c.* 63, § 2. *Amherst Bank* v. *Root*, 2 Met. 533. *Dedham Bank* v. *Chickering*, 3 Pick. 340. *The King* v. *Forrest*, 3 T. R. 38. 2. The postponement of the time of holding the annual meeting in 1850 discharged the sureties of Stevens. *Chelmsford Co.* v. *Demarest*, 7 Gray, 1. *Middlesex Manuf. Co.* v. *Lawrence*, 1 Allen, 339. 3. If such postponement did not discharge the sureties, the omission to elect a treasurer in 1860 would have that effect. 4. The plaintiffs are estopped by their settlement of the accounts of Stevens, and their reports to the legislature, to maintain this action. *Osgood* v. *Nichols*, 5

Gray, 420. *Carpenter* v. *King*, 9 Met. 511. *Dewey* v. *Field*, 4 Met. 381. *Harris* v. *Brooks*, 21 Pick. 195. *Baker* v. *Briggs*, 8 Pick. 122. 5. The credit of $265 should be applied to extinguish the older debt. 6. The items of interest were never in fact paid. The defendants are not liable for false indorsements made by Stevens.

DEWEY, J. The question in this case arises upon the bond given by William Stevens, and certain other persons as his sureties, for the faithful performance of his duties as treasurer of the Lexington and West Cambridge Railroad Company; and the particular inquiry is as to the period of time during which the responsibilities of the sureties attached.

Several cases bearing upon the general question of liability upon this bond have heretofore been before this court. No one of them is, however, precisely like the present. The case of *Chelmsford Co.* v. *Demarest*, 7 Gray, 1, has decided that a bond given by a treasurer of a manufacturing company, although in general terms, and with the condition " if during his continuance in office he shall faithfully perform," &c., does not bind the sureties beyond the period of his first election, and such further time as is reasonably sufficient for the election and qualification of his successor, the office being by statute an annual one. It was also held that his reëlection from time to time does not charge the sureties, and also that the statute provision, that the treasurers when elected " shall hold their offices until others are chosen and qualified in their stead," does not extend their liability to subsequent elections of the same person.

The case of *Middlesex Manuf. Co.* v. *Lawrence*, 1 Allen, 339, was also a suit upon a bond given by a treasurer of a manufacturing corporation, but the bond in that case contained a provision binding the sureties for his fidelity " for and during such further time as he may continue therein by any reëlection or otherwise." It was conceded that the sureties might be thus bound, if it was distinctly recited in the bond that they should be; but even this provision could not extend their liability beyond the period of the treasurer's continuous holding of his office, and did not include time during which he held the office

by virtue of a new election after he had left the same, and another person had been the treasurer for a few months.

The office of treasurer in the present case, unlike those just cited, is not by statute limited to one year, and we are therefore to look to some other source for its limitation. That is supposed to be found in the recital in the bond. It was to secure the faithful discharge of the duties of the office during his continuance in office, " during the present year, and for such further periods as he may from time to time be elected to said office." This recital that the office was one for the present year, if nothing further had been added, would clearly have limited the liability to that year, as it seems well settled that the limitation may be shown, either by a statute limiting the office, or by a recital of the term of office in the bond. That the bond may be limited by a recital of the term of office in the bond itself was early settled in the cases of *Arlington* v. *Merricke*, 2 Saund. 411, and *Liverpool Water Works* v. *Atkinson*, 6 East, 507. It was affirmed and somewhat extended by the opinion of this court in *Dedham Bank* v. *Chickering*, 3 Pick. 341. It was conceded by the court in the case of *Amherst Bank* v. *Root*, 2 Met. 522, that a recital in a bond that one has been appointed to an office for a limited time would restrict the liability of his sureties.

But the additional provision in this bond as to the further periods during which the treasurer may hold his office by reëlection from time to time creates the doubt in the present case. This provision we suppose to be legal and binding on the sureties, if expressed in apt and proper words. In the present case, had the plaintiffs duly discharged the duty of making regular annual elections of their treasurer, we perceive no ground for exempting the sureties from liability upon their bond for defaults in the office while he thus held it under successive annual elections. For nine successive years after the date of this bond such elections were regularly made, and the party thus elected continuously held the office and performed the duties of the same, and for that period this bond would clearly attach.

We see no ground of objection to this view of the case arising from the fact that the time of holding the annual meeting was

changed in 1849 from the last Wednesday of June to the first Wednesday of August. This postponement of the time of the annual meeting was by the enactment of a by-law to that effect. The office of treasurer was to be holden for the official year, as established by the corporation. This point seems to have been fully met in the opinion of the court in *Chelmsford Co.* v. *Demarest*, 7 Gray, 1. The election having been made on the first Wednesday of August 1849, that was the annual election contemplated by the parties, and was all that was required to keep the bond in force.

The case in relation to the year 1860 presents more serious difficulties. The company wholly neglected to elect a treasurer for the year succeeding their annual meeting in 1860. They voted at that time " to postpone the election of treasurer to the next meeting ; " and in fact no election was made until the 12th of August 1861.

Assuming that this office is, by the recital in this bond, to be treated as an annual one, the liability of the sureties would be limited, as we have seen, by the case of *Chelmsford Co.* v. *Demarest*, to the year for which the party was elected, and for such further time as was reasonably sufficient for the election and qualification of his successor, and no longer, although the corporation failed to elect at their next annual meeting. This would be decisive against the right of the plaintiffs to recover for subsequent defaults, had there been only the general stipulation that the party should, during his continuance in office, faithfully perform the duties of the same. What then is the effect of the further provision in the bond, " and for such further period as he may from time to time be elected to said office " ? Does this render the sureties liable during the period of a year in which there was no election, and does it embrace the case of an election or elections made after the expiration of a year in which there is no election ?

If the plaintiffs would treat this as a continuing guaranty, applicable to future appointments, must not those appointments be continuous and regularly made ? We have already seen that in the case of a surety to one holding an annual office, the

fact of his principal continuing to perform the duties of the office for a subsequent year has no effect, even if the bond was " if during his continuance in office he shall faithfully perform," &c. The bond only extended to a reasonable time beyond the year, sufficient to elect and qualify a new treasurer. So here, where this bond provided for the liability of the surety, not only for " the present year," but also " for such further periods as he may from time to time be elected to said office," was it not implied that those elections were to be continuous and at the expiration of each year ?

Had there been no election in 1861 and 1862, we suppose it would be quite clear that the election to the office of treasurer in 1859 for one year would not have charged the sureties for defaults of the principal occurring in those latter years. The election of 1859 charged the sureties for the faithful services of the principal to the time of the annual meeting in 1860, and for such further reasonable time as was necessary to elect and qualify a successor. That period was exhausted long before the election in 1861. To charge the defendants for defaults in 1861 and 1862, it must be held that upon any future election, however remote from the previous one, this bond would attach if no third person had been placed in the office in the meantime. The practical effect of such a decision would be, that the sureties would become responsible by the terms of their bond for any defaults at any future time, although the corporation wholly neglected its duty to make an election at the expiration of the appointed term of office. This is not, we think, the proper construction of this bond. The sureties had a right to all the benefits that might arise from a non-election. In making such election, the directors may be said to affirm their confidence in the incumbent. Permitting him to discharge the duties of an incumbent in office was a different thing. The effect of the omission to elect on the first Wednesday of August 1860, and until August 1861, was to limit the liability of the sureties to the time preceding the annual meeting in August 1860, with such further reasonable time as was necessary for electing and qualifying a successor. This limitation having once attached,

the liability was not one to be revived by an election in August 1861. The bond contemplated continuous elections, and a continuous liability. The case of *Middlesex Manuf. Co.* v. *Lawrence,* 1 Allen, 339, presented this ground of defence under facts somewhat stronger for the sureties, as there had been an actual withdrawal from the office, and the appointment of another for a few months, after which the former treasurer was reappointed and assumed the office again. The general language of the bond in that case was equally comprehensive with that used in this bond. The facts were different in the point specified. The continuing in office " by any reëlection or otherwise," was in that case, notwithstanding the subsequent election, held to be effectually interrupted by the appointment of a new incumbent and the withdrawal of the old one for a few months.

The continuance in office was here interrupted, as to the sureties, by the omission of the directors, after the expiration of the period for which he was elected, for twelve months to make an election. The obligation of the sureties, as to such further periods as he may from time to time be elected to said office, implies continuous reëlections. The result is, therefore, that the sureties upon this bond are only liable for the defaults of the principal while he held office under the election of 1859, and the previous years, being those defaults reported by the assessor as having occurred prior to the 1st of July 1860.

An objection was taken to the right of the plaintiffs to maintain any action upon this bond, upon the ground that the same had not been approved and accepted by the directors. Under the decisions of this court, and the cases cited in *Amherst Bank* v. *Root,* 2 Met. 533, the evidence upon that point was sufficient. The Gen. Sts. *c.* 63, § 2, do not seem in form to require a specific act of approval of the bond of the treasurer by the directors.

Nor is there any ground for avoiding liability upon the bond, by reason of the change in the mode of conducting the business of the road after the termination of the lease of the road, which occurred in 1857.

Nor do the various reports of the committees of the corporation appointed to audit the accounts of the treasurer estop the

plaintiffs from enforcing a claim for unfaithfulness and misappropriation of the funds intrusted to him, against the sureties in the bond.

The sureties are properly chargeable with the sums indorsed as interest paid upon the notes of said Stevens to the plaintiffs. The indorsements thus made furnish sufficient evidence to create such liability, without any further evidence of actual payments of money.

The only remaining subject of inquiry is that of the application of a sum of $265, entered upon the books of the corporation by Stevens as a credit to the passenger department, in these words: " Cash received of I. N. Damon, Aug. 9, 1862, omitted, $265." The assessor, in the absence of any satisfactory evidence as to the time or circumstances of this entry or the payment of this sum, has allowed the same generally in reduction of sums charged to Stevens for moneys received of Damon, and not wholly in reduction of the specific sum of $400 charged as a default before July 1st 1860. For the reasons assigned by the assessor, we are of opinion that the defendants cannot properly object to the disposition of this item thus made.